# EXHIBIT 4

HRSA
Health Resources & Services Administration
**Office of Special Health Initiatives**
5600 Fishers Lane
Rockville, MD 20857

September 18, 2024

**BY EMAIL**
Lucas Montarce
Executive Vice President and Chief Financial Officer
Eli Lilly and Company
montarce_lucas@lilly.com

Dear Lucas Montarce:

The Health Resources and Services Administration (HRSA) has reviewed the information provided in the September 9, 2024, letter from Eli Lilly and Company (Lilly) regarding Lilly's proposal to implement a 340B rebate model. Lilly indicated that it intends to implement its proposed rebate model on November 1, 2024. The 340B statute states that "[t]he Secretary shall enter into an agreement with each manufacturer of covered outpatient drugs under which the amount required to be paid (taking into account any rebate or discount, *as provided by the Secretary*) to the manufacturer" shall not exceed the statutory ceiling price formula. 42 U.S.C. § 256b(a)(1) (emphasis added). To date, the Secretary has not provided for such rebate as proposed by Lilly. Therefore, implementing such a proposal at this time would be inconsistent with the statutory requirements for the 340B Program, which require the approval of a rebate model such as Lilly has proposed.

In addition, HRSA requests responses to the following questions:

1. Shifting to the rebate model would disrupt how the 340B Program has operated for over thirty years. As a result of this shift, covered entities, including those which primarily serve rural and underserved populations, would need to pay significantly higher prices on prescription drugs at the time of purchase.
    a. Lilly asserts that the rebate model will have no impact on patients. Has Lilly conducted an evaluation of the impact of this proposal on the scope and breadth of health care access for patients served by affected covered entities?
    b. Has Lilly conducted an analysis of the extent of the additional burden and/or costs to the affected covered entities, particularly those that are the sole or primary source of health care in a rural or underserved community?
    c. Lilly indicated that in "some" cases covered entities will receive the cash rebate before paying the upfront cost for the drug itself. Does Lilly have any estimates or has it performed any analysis indicating the proportion of transactions for which this might occur?

2. Lilly states that it will require covered entities to submit rebate claims to the rebate platform.
    a. What other parties, if any, would Lilly share the claims data with?
    b. What protections and safeguards would Lilly plan to implement to ensure such information would be used in support of the 340B Program?
    c. What protections and safeguards would Lilly plan to implement to ensure the privacy and security of such information?
    d. If available, please provide a copy of the Privacy Policy &Terms of Service (or similarly titled agreements) that would govern Kalderos, covered entities, and any other parties in this process.

3. If Lilly identifies a potential 340B duplicate discount, how will the rebate claim be adjudicated?
    a. What is the timeframe that Lilly will process any such adjudication?
    b. What reconsideration or appeals process will Lilly implement?
    c. Will Lilly automatically deny covered entities' 340B rebate claims if Lilly believes a Medicaid rebate was already paid?
    d. Will Lilly automatically deny Medicaid rebate claims if Lilly believes a covered entity's 340B rebate claims have already been paid?

4. Will covered entities receive claim-by-claim information from Lilly regarding which claims were rejected and on what basis?

5. What reconsideration or appeals process will Lilly implement to ensure covered entities receive any 340B discounts that are required by statute?

6. Lilly provided a listing of the data elements that it will collect for the validation of claims. Please indicate how these data elements align with the compliance requirements in the 340B statute. The documentation submitted by Lilly refers to a "reasonability check" for claim submissions relative to the date of service. Please explain what will be involved in this "reasonability check."

7. With respect to the use of pharmacies with which covered entities contract:
    a. Will covered entities need to demonstrate that they purchased individual drugs subject to the rebate claim at wholesale acquisition cost?
    b. Will this process require covered entities to maintain a separate stock of drugs at the contract pharmacy?
    c. If so, how does Lilly plan to ensure this process does not functionally deny covered entities access to the 340B price required by the statute given the additional upfront cost and administrative burden for covered entities, particularly low-margin safety net providers?

8. In 2023, Lilly requested that HRSA post two different refund notices to covered entities on its website as part of standard restatements of 340B drugs. As part of that process, Lilly issued refunds using wholesaler chargeback data. Under this model, how will Lilly operationalize refunds when there are standard restatements in a way that supports the requirement to provide the 340B price?

9. Under this proposal, how would Lilly treat current unreplenished accumulations?

10. Under Lilly's plan, contract pharmacy restrictions would be managed by Kalderos and the 340B ESP model would no longer be used. What transition time will be provided to covered entities that need to designate contract pharmacies in a new system? HRSA has received a number of reports of technical and customer service difficulties with 340B ESP. How would Lilly ensure covered entities could submit claims without technical difficulties or delays and would be able to access customer support without any significant issues under the Kalderos model?

Please send your responses to 340BPricing@hrsa.gov.

Sincerely,

Chantelle V. Britton, M.P.A., M.S.
Director, Office of Pharmacy Affairs

Cc:
Derek Asay, Senior Vice President, Government Strategy and Federal Accounts