**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ELI LILLY AND COMPANY, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> ROBERT F. KENNEDY JR., *et al.*, <br><br> *Defendants*. | Case No. 24-CV-3220 (DLF) |
| BRISTOL MYERS SQUIBB COMPANY, <br><br> *Plaintiff*, <br><br> v. <br><br> ROBERT F. KENNEDY JR., *et al.*, <br><br> *Defendants*. | Case No. 24-CV-3337 (DLF) |
| NOVARTIS PHARMACEUTICALS CORPORATION, <br><br> *Plaintiff*, <br><br> v. <br><br> ROBERT F. KENNEDY JR., *et al.*, <br><br> *Defendants*. | Case No. 25-CV-0117 (DLF) |

**PLAINTIFFS' JOINT OPPOSITION TO DEFENDANTS'
<u>MOTION TO ENLARGE THE BRIEFING SCHEDULE</u>**

Eli Lilly and Company and Lilly USA, LLC (collectively Lilly), Bristol Myers Squibb Company (BMS), and Novartis Pharmaceuticals Corp. (Novartis) respectfully oppose the Government's extension motion.

**ARGUMENT**

The briefing schedules in these now-consolidated-for-briefing cases were stipulated schedules; the Government affirmatively agreed to each of the dates set out in them. And in December and January when the Government agreed to those dates, it knew four things. First, the Government knew there would be a transition in Administrations and that newly installed leadership at the Health Resources and Services Administration (HRSA) would need to determine its position on the claims asserted in these cases.[1] Second, the Government knew from the complaints that Lilly, BMS, and Novartis raise some common arguments as well as other, different arguments reflecting each manufacturer's unique circumstances. Third, the Government knew that it had assigned only a single attorney to these cases. And fourth, the Government knew that Lilly, BMS, and Novartis had proposed the summary-judgment schedule to avoid preliminary-injunction briefing that would have moved on a more-accelerated schedule than the summary-judgment schedule that the parties ultimately agreed to. All of these things were true then, and they remain true now. The Government's late-breaking regret that it stipulated to this schedule is not good cause to delay briefing. *Cooper v. United States Dep't of Just.*, 169 F. Supp. 3d 20, 45 (D.D.C. 2016) (courts have broad "discretion" over an extension motion).

---

[1] There is, however, little reason to think new HRSA leadership will need significant time to get up to speed. The new HRSA Administrator is Thomas J. Engels, who previously held the same position under the first Trump Administration. HRSA, Thomas J. Engels, Biography (last accessed Feb. 24, 2025), https://www.hrsa.gov/about/organization/engels-bio. The Government's motion is conspicuously light on the details of who will need to be "briefed," the nature of that "brief[ing]," and why the briefing could not have occurred between January 21 and March 3.

The Court has already made clear that it is not inclined to extend the agreed-upon briefing schedule. When the Court asked the parties for their positions on consolidating the cases for briefing and argument, the Government suggested that "the Court order the parties to submit a Joint Status Report one week after the Court issues any order on consolidation to propose a uniformed briefing schedule or any other procedures to govern the litigation of these consolidated actions." No. 24-cv-3337, ECF No. 27 at 2. Lilly, BMS, and Novartis, by contrast, proposed that the parties in the *Lilly*, *BMS*, and *Novartis* cases "would follow the same briefing schedule already negotiated between the parties and entered by this Court." No. 24-cv-3337, ECF No. 27 ¶ 2. The three companies explained that the Government's contrary proposal was a poorly concealed effort to delay briefing and that "[t]he government should not now be allowed to . . . alter the scheduling orders that every other party is currently abiding by under the guise of an order that merely sought the parties' positions on consolidation." *Id.* ¶ 5. And the Court agreed with the companies, notifying the parties that the Court was "planning on maintaining the briefing schedules as is."

The Court should also adhere to the set briefing schedule because further delay would prejudice Plaintiffs. That is especially true as to BMS and Novartis, who are subject to the Inflation Reduction Act's impending "maximum fair price" requirement. BMS and Novartis need timely resolution of their claims because they must submit their MFP effectuation plans by September 1, 2025, and the companies need real-world experience with their models well ahead of that date. No. 24-cv-3337, ECF No. 17-1 at 39; *id.*, ECF No. 12 ¶ 4; No. 25-cv-117, ECF No. 12 at 17–18. That is why BMS has sought an expedited decision by May 1, 2025. *See* No. 24-cv-3337, ECF No. 12. Yet the Government never acknowledges that its proposed extension threatens inflicting the very harm that BMS and Novartis have brought this action to address: that it is unlawful for one component of HHS (CMS) to impose an MFP-340B nonduplication obligation on

manufacturers while another component (HRSA) prevents manufacturers from implementing pricing models that would allow them to satisfy their nonduplication obligations.

HRSA has not simply refused to bless the companies' proposed cash-rebate models: The agency has concocted a novel statutory preapproval requirement. No. 24-cv-3220, ECF No. 15-1 at 31–35; No. 24-cv-3337, ECF No. 17-1 at 29, 32; No. 25-cv-117, ECF No. 12-1 at 26, 29. That position has raised the temperature of this case dramatically; it is the basis for HRSA's dramatic threat to terminate a manufacturer's Pharmaceutical Pricing Agreement if it implements its proposed model—thus expelling the manufacturer from Medicaid and Medicare Part B—as well as to levy civil monetary penalties. AR 202–03, 424–25. With that ultimatum on the table, a manufacturer would incur grave, immediate risks by implementing its model before receiving a decision from the Court. That dynamic makes this case fundamentally different from the contract-pharmacy litigation before this Court in 2021. *See, e.g.*, *Novartis Pharms. Corp. v. Espinosa*, No. 21-CV-1479 (DLF) (D.D.C. Sept. 23, 2021), ECF No. 26 at 1 (noting that HRSA had referred Novartis to the HHS Office of Inspector General regarding its already-implemented contract-pharmacy policy). Much of the urgency, in other words, is of HRSA's making.

BMS and Novartis are already facing a time crunch. It could take months from this Court's decision to implement the proposed cash-rebate models. Assuming the Court were able to meet BMS's requested May 1 decision request under the current briefing schedule, the Government's demand for another 30 days would push a decision to June 1. Depending on the Court's decision, that may leave precious little time for BMS and Novartis to devise an alternative strategy for resolving the nonduplication bind that HHS has created by imposed a 14-day deadline for providing access to MFPs yet refusing to require covered entities to provide data that would help identify potential MFP-340B duplication before it occurs. No. 25-cv-117, ECF No. 12-1 at 46–

47. Having created the problem, the least the Government could do is give BMS and Novartis time to implement a solution.

Finally, each additional day without a decision will inflict continued monetary harm on Lilly, BMS, and Novartis. As the companies explained in their summary-judgment motions, manufacturers that participate in the 340B Program are currently subject to tremendous amounts of duplicate and improper discounts. No. 24-cv-3220, ECF No. 15-1 at 14–17; No. 24-cv-3337, ECF No. 17-1 at 12–15; No. 25-cv-117, ECF No. 12-1 at 11–14. The cash-replenishment and cash-rebate models proposed by Lilly, BMS, and Novartis will combat these unlawful practices. No. 24-cv-3220, ECF No. 15-1 at 38–40; No. 24-cv-3337, ECF No. 17-1 at 35–37; No. 25-cv-117, ECF No. 12-1 at 17–18. But again, HRSA has threatened existential sanctions for any manufacturer that tries to address the problem. AR 202–03, 424–25. So the only way for Lilly, BMS, and Novartis to navigate past the Scylla of massive improper price concessions and the Charybdis of draconian governmental penalties is to promptly receive a decision from this Court setting aside HRSA's refusal to approve the companies' models. The Court should not delay resolution of these cases.

## CONCLUSION

For the foregoing reasons, the motion should be denied.

Dated: February 24, 2025                                Respectfully submitted,

/s/ Catherine E. Stetson
John C. O'Quinn
Matthew S. Owen
Megan McGlynn
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue N.W.
Washington, D.C. 20004
(202) 389-5000
john.oquinn@kirkland.com
matt.owen@kirkland.com
megan.mcglynn@kirkland.com

Catherine E. Stetson (D.C. Bar No. 453221)
Jacob T. Young (D.C. Bar No. 90014334)
HOGAN LOVELLS US LLP
555 Thirteenth Street N.W.
Washington, D.C. 20004
(202) 637-5600
cate.stetson@hoganlovells.com
jake.young@hoganlovells.com

*Attorneys for Plaintiffs Eli Lilly and Company and Lilly USA, LLC*

/s/ Sean Marotta
Sean Marotta (D.C. Bar No. 1006494)
Marlan Golden (D.C. Bar No. 1673073)
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
Telephone: (202) 637-4881
Facsimile: (202) 637-5910
sean.marotta@hoganlovells.com

*Attorneys for Plaintiff Bristol Myers Squibb Company*

/s/ Sean Marotta
Sean Marotta (D.C. Bar No. 1006494)
Jacob T. Young (D.C. Bar No. 90014334)
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004

                                    (202) 637-4881
                                    sean.marotta@hoganlovells.com

*Attorneys for Plaintiff Novartis Pharmaceuticals Corporation*