# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELI LILLY AND COMPANY, *et al.,* <br><br> *Plaintiffs,* <br><br> v. <br><br> ROBERT F. KENNEDY JR., *et al.,* <br><br> *Defendants.* | Case No. 1:24-cv-3220 (DLF) |
| SANOFI-AVENTIS U.S. LLC <br><br> *Plaintiff,* <br><br> v. <br><br> ROBERT F. KENNEDY JR., *et al.,* <br><br> *Defendants.* | Case No. 1:24-cv-3496 (DLF) |
| BRISTOL MYERS SQUIBB COMPANY, <br><br> *Plaintiff,* <br><br> v. <br><br> ROBERT F. KENNEDY JR., *et al,* <br><br> *Defendants.* | Case No. 1:24-cv-3337 (DLF) |
| NOVARTIS PHARMACEUTICALS CORPORATION, <br><br> *Plaintiffs,* <br><br> v. <br><br> ROBERT F. KENNEDY JR., *et al,* <br><br> *Defendants.* | Case No. 25-cv-0117 (DLF) |

**340B HEALTH, UMASS MEMORIAL MEDICAL CENTER, AND GENESIS HEALTHCARE SYSTEM'S**
**REPLY IN SUPPORT OF MOTION TO INTERVENE**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES................................................................................................ ii

ARGUMENT .................................................................................................................... 1

I.    Proposed Intervenors Have Satisfied the Standard for Intervening as of Right. .................... 1

    A.   Proposed Intervenors Have Standing. ............................................................... 1

    B.   The Motion to Intervene is Timely...................................................................... 3

    C.   *Astra* Plainly Does Not Bar Intervention and Proposed Intervenors Have a Legally Protected Interest in the Case.............................................................................. 5

    D.   Proposed Intervenors' Interest Will be Impaired Should Intervention be Denied. ............. 6

    E.   The Government Will Not Adequately Represent Proposed Intervenors' Interest. ........... 7

    F.   Alternatively, the Court Should Allow Permissive Intervention. ..................................... 10

CONCLUSION................................................................................................................11

# TABLE OF AUTHORITIES

## CASES

*100Reporters LLC v. United States Dep't of Just.*,
  307 F.R.D. 269 (D.D.C. 2014) ................................................................. 8

*American Hospital Association v. Department of Health & Human Services*,
  No. 4:20-cv-08806-YGR, 2021 WL 616323 (N.D. Cal. Feb. 17, 2021) ................................... 6

*Ass'n of Washington Bus. v. United States Env't Prot. Agency*,
  No. 23-CV-3605 (DLF), 2024 WL 3225937 (D.D.C. June 28, 2024) ........................... 2, 4, 10

*Astra USA, Inc. v. Santa Clara County*,
  563 U.S. 110 (2011) ................................................................. 5, 6, 10

*AstraZeneca Pharms. LP v. Cochran*,
  No. 21-cv-0027 (D. Del. Apr. 26, 2021) ................................................................. 3

*Biden v. Internal Revenue Service*,
  No. 23-2711, 2024 WL 4332072 (D.D.C. Sept. 27, 2024) ....................................... 3

*Brotherhood of Locomotive Engineers & Trainmen v. Fed. Railroad Administration*,
  972 F.3d 83 (D.C. Cir. 2020) ................................................................. 7

*Campaign Legal Ctr. v. Fed. Election Comm'n*,
  334 F.R.D. 1 (D.D.C. 2019) ................................................................. 6

*Carpenters Indus. Council v. Zinke*,
  854 F.3d 1 (D.C. Cir. 2017) ................................................................. 2

*Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*,
  788 F.3d 312 (D.C. Cir. 2015) ................................................................. 2, 5, 6

*Czyzewski v. Jevic Holding Corp.*,
  580 U.S. 451 (2017) ................................................................. 2

*Dimond v. D.C.*,
  792 F.2d 179 (D.C. Cir. 1986) ................................................................. 8

*E.E.O.C. v. Nat'l Children's Ctr., Inc.*,
  146 F.3d 1042 (D.C. Cir. 1998) ................................................................. 10

*Env't Integrity Project v. Wheeler*,
  No. 20-CV-1734 (KBJ), 2021 WL 6844257 (D.D.C. Jan. 27, 2021) ....................................... 10

*Farmer v. United States Env't Prot. Agency*,
  No. 24-CV-1654 (DLF), 2024 WL 5118193 (D.D.C. Dec. 16, 2024) ............................... 4, 5, 7

*Forest Cnty. Potawatomi Cmty. v. United States,*
    317 F.R.D. 6 (D.D.C. 2016) ................................................................................. 2

*Fund for Animals, Inc. v. Norton,*
    322 F.3d 728 (D.C. Cir. 2003) ........................................................................... 8, 9

*Illinois Bell Telephone Co. v. F.C.C.,*
    911 F.2d 776 (D.C. Cir. 1990) .............................................................................. 8

*In re Lorazepam & Clorazepate Antitrust Litigation,*
    205 F.R.D. 363 (D.D.C. 2001) ............................................................................. 4

*In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.,*
    928 F.3d 42 (D.C. Cir. 2019) ............................................................................... 1

*Jones v. Prince George's Cnty., Md.,*
    348 F.3d 1014 (D.C. Cir. 2003) ........................................................................... 5

*Me-Wuk Indian Cmty. of the Wilton Rancheria v. Kempthorne,*
    246 F.R.D. 315 (D.D.C. 2007) ............................................................................. 8

*Nat. Res. Def. Council v. Costle,*
    561 F.2d 904 (D.C. Cir. 1977) ........................................................................... 3, 9

*Nuesse v. Camp,*
    385 F.2d 694 (D.C. Cir. 1967) ............................................................................ 10

*Sw. Ctr. for Biological Diversity v. Berg,*
    268 F.3d 810 (9th Cir. 2001) ............................................................................... 2

*United States v. Philip Morris USA Inc.,*
    566 F.3d 1095 (D.C. Cir. 2009) ........................................................................... 6

*Wildearth Guardians v. Salazar,*
    272 F.R.D. 4 (D.D.C. 2010) ................................................................................. 2

**OTHER AUTHORITIES**

Letter from Carole Johnson, Administrator, HRSA to Paul Hudson, CEO,
    Sanofi-Aventis U.S. LLC (Dec. 13, 2024) ............................................................. 4

Letter from Carole Johnson, Administrator, HRSA, to Joaquin Duato,
    Chairman and Chief Executive Officer, Johnson & Johnson (Sept. 17, 2024) ........... 4

340B Health, UMass Memorial Medical Center (UMass), and Genesis HealthCare System (Genesis) (together, Proposed Intervenors) respectfully submit this reply in support of their Motion to Intervene.

## ARGUMENT

I. **Proposed Intervenors Have Satisfied the Standard for Intervening as of Right.**

A. **Proposed Intervenors Have Standing.**

Proposed Intervenors clearly have standing in this case. In claiming that Proposed Intervenors' injury is too hypothetical to support standing, Manufacturer-Plaintiffs, Eli Lilly and Company and Lilly USA, LLC (Lilly), Bristol Myers Squibb Company (BMS), Sanofi-Aventis U.S. LLC (Sanofi), and Novartis Pharmaceuticals Corp. (Novartis) (together, Plaintiffs), ignore the UMass and Genesis declarations that demonstrate that they will be injured *even if* Plaintiffs' rebate model functions as promised and grants all valid rebate claims.

Specifically, Plaintiffs do not even address the issue of the financial loss Proposed Intervenors would incur if required to purchase Plaintiffs' drugs upfront at their full price, even if they are eventually reimbursed for those funds through a rebate. This delay in receiving funds, by itself, is an independent injury that supports standing. *E.g., In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42, 66 (D.C. Cir. 2019) (finding that delay in receipt of refunds, "and the forgone time value of that money, is an actual, tangible pecuniary injury"). 1:25-cv-00117-DLF Desai Decl. ¶ 20 (Dkt. No. 15-4); Carr Decl. ¶ 13 (Dkt. No. 15-2).

In addition, Plaintiffs' rebate plan would require UMass and Genesis, as well as the other members of 340B Health, to spend hundreds of thousands of dollars on the additional staffing needed to comply with Plaintiffs' rebate model requirements. *See generally e.g.,* Mem. in Support of Intervention 1:25-cv-00117-DLF (Dkt. No 15-1) at 15 (Mot. to Intervene); Desai Decl. ¶¶ 16, 17; Carr Decl. ¶17.  "Economic harm to a business clearly constitutes an injury-in-fact. And the

amount is irrelevant. A dollar of economic harm is still an injury-in-fact for standing purposes." *Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 5 (D.C. Cir. 2017) (citing *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464 (2017)); *see also Ass'n of Washington Bus. v. United States Env't Prot. Agency*, No. 23-CV-3605 (DLF), 2024 WL 3225937, at *12 (D.D.C. June 28, 2024) (granting motion to intervene after finding that putative intervenors had standing because vacatur of an agency decision would cause putative intervenors financial harm on putative intervenors). Plaintiffs say that their proposed rebate models should not require new staffing, but the Desai and Carr declarations illustrate why that assertion is incorrect. The Court should accept Proposed Intervenors' evidence in the declarations as true. *See Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 9 (D.D.C. 2010) ("Courts are to take all well-pleaded, nonconclusory allegations in the motion to intervene . . . and declarations supporting the motion as true absent sham, frivolity or other objections.") (quoting *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001)).

In addition to these concrete harms, the D.C. Circuit has "generally found a sufficient injury in fact where a party benefits from agency action, the action is then challenged in court, and an unfavorable decision would remove the party's benefit." *Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 317 (D.C. Cir. 2015) (collecting cases). As this Court has found, "all three components of Article III standing" are satisfied when "plaintiffs' desired relief would remove a benefit received by the [Proposed Intervenors] under the challenged policy." *Ass'n of Washington Bus.*, 2024 WL 3225937, at *11; *see e.g., Forest Cnty. Potawatomi Cmty. v. United States*, 317 F.R.D. 6, 13 (D.D.C. 2016) (collecting cases). Proposed Intervenors benefit from the Health Resources and Services Administration's (HRSA's) denials of the proposed rebate models, and an unfavorable decision permitting Plaintiffs to impose their rebate models would harm

Proposed Intervenors. Mot. to Intervene 10–13, 16–17. This again is an independent basis for standing that Plaintiffs fail to address.

Finally, Plaintiffs argue that Proposed Intervenors lack standing because intervention would risk "opening the floodgates to participation by countless other similarly situated entities with the same generalized issue." Pl. Opp'n 6.[1] That theory leads to the backwards conclusion that no entity would ever have standing to intervene, or even standing to sue, if the harm caused by the subject of the litigation is felt by many other entities, a conclusion that defies ordinary standing principles as well as common sense. In any event, no other covered entities have moved to intervene, probably because nearly all 340B hospitals are members of 340B Health, which will adequately represent their interests here. *See also Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 911 (D.C. Cir. 1977) (rejecting the argument that a putative intervenor did not have an interest in the litigation because intervention may lead to a "cluttering of lawsuits" by multiple intervenors and finding that the adequate representation factor protected against such a concern).[2]

**B.    The Motion to Intervene is Timely.**

Proposed Intervenors' Motion is timely because intervention will not cause any delay in the proceedings in this case. Proposed Intervenors have stated that they will comply with the current, expedited scheduling order, and will file their oppositions to the motions for summary

---

[1]    *Biden v. Internal Revenue Service* does not stand for the proposition that if an injury is felt by a class of entities, it cannot support standing. No. 23-2711, 2024 WL 4332072, at *10 (D.D.C. Sept. 27, 2024). That case evaluated the question of whether the claimed interest was a "legal interest" as opposed to a "general and indefinite" interest. *Id.*

[2]    Plaintiffs rely on *AstraZeneca Pharms. LP v. Cochran,* to support their argument. No. 21-cv-0027 (D. Del. Apr. 26, 2021) Hr'g Tr. (Dkt. No. 51). Despite Plaintiffs' attempt to cherry-pick quotes from that ruling, that court actually stated, in respect to the prospect of further intervention by other covered entities, "I recognize that's not necessarily inconsistent with [Fed. R. Civ. P. 24(a)]." *Id.* 36:22–23. Additionally that out-of-circuit dicta is in conflict with this Circuit's caselaw, which controls.

judgment on the deadlines set by that schedule. Since intervention will not prejudice the parties, there was no undue delay. *Farmer v. United States Env't Prot. Agency,* No. 24-CV-1654 (DLF), 2024 WL 5118193, at *4 (D.D.C. Dec. 16, 2024) (granting motion to intervene filed nearly three months after the action was initiated and after motion to dismiss briefing began); *Ass'n of Washington Bus.,* 2024 WL 3225937, at *13 (motion to intervene filed two months after complaint is timely).[3]

This case is readily distinguishable from *In re Lorazepam & Clorazepate Antitrust Litigation,* where the putative intervenor waited nine months to intervene. 205 F.R.D. 363, 368 (D.D.C. 2001). Here, Plaintiffs' Complaints were filed between November 14, 2024, and January 15, 2025, the latter date being only three weeks before Proposed Intervenors moved to intervene. Proposed Intervenors took no more time than necessary to review the Complaints, study each of Plaintiffs' proposed rebate models, analyze the impact the proposed rebate models would have on 340B hospitals, and prepare declarations from 340B Health, UMass and Genesis.

Plaintiffs claim that they will be delayed because Proposed Intervenors may present arguments different from HHS, even though they themselves point out 340B Health first stated its legal position in August 2024, and HRSA itself identified 340B Health's legal arguments as an alternative reason to deny Sanofi's and Johnson & Johnson Health Care Systems, Incorporated's proposed rebate models.[4]    Furthermore, Plaintiffs point to no authority for the claim that

---

[3]    In recognition of the expedited briefing schedule, Proposed Intervenors are also submitting this reply in support of their Motion to Intervene two days prior to its due date.

[4]    Letter from Carole Johnson, Administrator, HRSA to Paul Hudson, CEO, Sanofi-Aventis U.S. LLC (Dec. 13, 2024), Health Resources & Services Administration, https://www.hrsa.gov/sites/default/files/hrsa/opa/dec-13-2024-hrsa-letter-sanofi.pdf (last visited Feb. 16, 2024); Letter from Carole Johnson, Administrator, HRSA, to Joaquin Duato, Chairman and Chief Executive Officer, Johnson & Johnson (Sept. 17, 2024) (Dkt. No. 1-9).

intervention should be denied as untimely because Proposed Intervenors may have different arguments.

### C.    *Astra* Plainly Does Not Bar Intervention and Proposed Intervenors Have a Legally Protected Interest in the Case.

At the outset, Plaintiffs completely ignore that courts in the D.C. Circuit find that this prong of the intervention test is met when putative intervenors have demonstrated standing, as Proposed Intervenors have done here. *Crossroads Grassroots Pol'y Strategies*, 788 F.3d at 319–20; *Farmer*, 2024 WL 5118193, at *4.

Plaintiffs rely on *Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110 (2011), but that case does not address issues pertaining to intervention nor does it hold that Proposed Intervenors do not have a legal interest in cases relating to the 340B Program. Instead, the basic holding in that case is that "suits by 340B entities to enforce ceiling-price contracts running between drug manufacturers and the Secretary of [the Department of Health and Human Services (HHS)] are incompatible with the statutory [340B] regime." *Id.* at 113. In contrast, here Proposed Intervenors do not seek to enforce their rights to discounts under the 340B statute; instead, they seek to support HHS and HRSA in defending against Plaintiffs' interpretation of the 340B statute that, if accepted, changes how 340B payments are made.

While *Astra* involved an original action by private parties to enforce the 340B statute, there is no requirement that the putative intervenor be entitled to bring its own lawsuit against one of the existing parties to have a legal interest in the case. As the D.C. Circuit has held, "[i]n a motion to intervene under Rule 24, 'the question is not whether the applicable law assigns the prospective intervenor a cause of action. Rather, the question is whether the individual may intervene in an already pending cause of action.'" *Crossroads Grassroots Pol'y Strategies,* 788 F.3d at 319–20 (quoting *Jones v. Prince George's Cnty., Md.,* 348 F.3d 1014, 1017–18 (D.C. Cir. 2003)). "Indeed,

5

as Rule 24's plain text indicates, intervenors of right *need only an interest* in the litigation—*not a 'cause of action' or 'permission to sue.'* " *Id.* (quoting *Jones,* 348 F.3d at 1018) (emphasis added) (cleaned up); *see also, e.g., United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1145 (D.C. Cir. 2009); *Campaign Legal Ctr. v. Fed. Election Comm'n*, 334 F.R.D. 1, 6 (D.D.C. 2019) (applying *Crossroads Grassroots Pol'y Strategies* to the legal interest prong of the intervention test).

*American Hospital Association v. Department of Health & Human Services,* a case that concerns dismissal of claims initially brought by covered entities, is not to the contrary. No. 4:20-cv-08806-YGR, 2021 WL 616323, at *5 (N.D. Cal. Feb. 17, 2021). There, 340B covered entities initiated the action, and thus that case did not involve intervention and is therefore no bar to the present motion. Furthermore, that decision and the position that Plaintiffs advocate here, would mean that *Astra* deprived 340B entities of any right to use the cause of action created by the Administrative Procedure Act to challenge or support agency decisions, even though *Astra* never mentions the APA. That cannot be correct.

Nor is Proposed Intervenors' "only concern" that Plaintiffs' proposed rebate models will improperly deny claims, resulting in overcharges, which could be disputed in HRSA's Alternative Dispute Resolution (ADR) process. It bears repeating that Proposed Intervenors will be harmed *even if* Plaintiffs' rebate models function as promised, and the ADR process would provide no relief for those harms. Desai Decl. ¶¶ 16, 17; Carr Decl. ¶¶ 13, 17**.** This provides another, independent reason that *Astra* is not applicable here.

### D.    Proposed Intervenors' Interest Will be Impaired Should Intervention be Denied.

Plaintiffs ignore the standard used to evaluate this prong for intervention of right, which asks whether disposition of the present action would disrupt the status quo of Proposed

Intervenors' interests. *Farmer,* 2024 WL 5118193, at *4. Plaintiffs instead argue that any interest Proposed Intervenors have in the matter will not be impaired because Proposed Intervenors do not have a legally protected interest in this case and repeat their standing arguments. As demonstrated in Sec. I.A and I.C, those arguments are incorrect.

Plaintiffs appear to admit that Proposed Intervenors would be harmed by the proposed rebate models, which negates Plaintiffs' arguments that Proposed Intervenors do not have standing (Pl. Opp'n 11), but claim that the harm is "self-inflicted" because the harm is somehow tied to replacing the product replenishment model with plaintiffs' rebate models. But this argument makes no sense because Plaintiffs' contention that their proposed rebate models would replace the product replenishment model assumes the two involve a similar amount of work. That is incorrect. A rebate model would require substantial extra work and resources that are not needed under the replenishment model, which generally does not involve claims data submissions to manufacturers or the need to validate receipt of rebates. This misunderstanding by Plaintiffs itself supports permitting intervention since Proposed Intervenors' have the expertise in the intricacies of the 340B payment system, including the product replenishment model, which will assist the court in resolving this case.

### E. The Government Will Not Adequately Represent Proposed Intervenors' Interest.

Plaintiffs argue that intervention should not be permitted because Proposed Intervenors will be barred from making novel arguments. But Plaintiffs are unable to provide any support for this irrelevant claim. *Brotherhood of Locomotive Engineers & Trainmen v. Fed. Railroad Administration* stands for the uncontroversial principle that in administrative law, arbitrary and capricious review of agency action is limited to the grounds that the agency invoked when it took the action. 972 F.3d 83, 117 (D.C. Cir. 2020). And *Illinois Bell Telephone Co. v. F.C.C.,* 911

F.2d 776, 786 (D.C. Cir. 1990) stands for the proposition that an intervenor may not add new claims to the litigation, but by no means limits intervenors to arguments made by parties. *See Me-Wuk Indian Cmty. of the Wilton Rancheria v. Kempthorne*, 246 F.R.D. 315, 321 (D.D.C. 2007) ("Although [proposed intervenors] may employ different theories and set forth different arguments than plaintiff, the central interest at issue remains constant.").

To the extent Plaintiffs imply that the Government Defendants will advance the same legal arguments as Proposed Intervenors, that is no bar to intervention; courts in this circuit consistently hold that while "the intervenor and the government entity involved in the litigation frequently *may agree on a legal position or course of action*, the D.C. Circuit nonetheless 'often [has] concluded that governmental entities do not adequately represent the interests of aspiring intervenors.'" *100Reporters LLC v. United States Dep't of Just.*, 307 F.R.D. 269, 279 (D.D.C. 2014) (quoting *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003)) (emphasis added).

Proposed Intervenors are the only entities that can adequately describe the impact of the proposed rebate model on 340B Providers, including the financial impact, which is a significant consideration given that the purpose of the 340B is to help 340B Providers stretch resources to provide services to low-income patients and communities. By requiring certain 340B Providers to purchase covered drugs upfront at their full prices, effectively floating Plaintiffs the difference between the drug's full price and the 340B discount price, the proposed rebate models would significantly impact the funds 340B Providers have available to meet the goals of the 340B Program. As the D.C. Circuit has found, government representation can be inadequate *because* private parties, such as Proposed Intervenors, represent "a more narrow and 'parochial' financial interest not shared" by the general public, which the government represents. *Fund for Animals,* 322 F.3d at 736–37 (quoting *Dimond v. D.C.,* 792 F.2d 179, 192–93 (D.C. Cir. 1986)). Even if

HRSA was aware of these financial considerations, that does not mean that the Government Defendants will give "them the kind of primacy that [Proposed Intervenors] would give them" and provide adequate representation. *Fund For Animals*, 322 F.3d at 736.

Furthermore, the D.C. Circuit has held that intervention is warranted when a putative intervenor has knowledge of the "impact that regulation can be expected to have upon [its] operations" that will serve "as a vigorous and helpful supplement to [the government defendants'] defense." *Nat. Res. Def. Council,* 561 F.2d at 912–13. This is particularly true when a case involves "questions of very technical detail and data;" in such a case, "experience and expertise in their relevant fields" will contribute to a court's informed resolution of the relevant issues. *See id*. at 913. Plaintiffs have made several factual, technical assertions regarding its proposed rebate model, the product replenishment model used by 340B Providers, HRSA's audit findings of 340B Providers, and the integrity of the 340B Program itself. Proposed Intervenors have the "experience," "expertise," and "data" to rebut those assertions that the Government Defendants do not have*, see id*.*,* and are the only entities that can explain the product replenishment model from the perspective of an actual user of the model. Proposed Intervenors also have specific knowledge of the proposed rebate models' impact on 340B Hospitals' operations and finances, information to which the Government Defendants do not have access. Finally, Proposed Intervenors contest several of the assertions made by Plaintiffs regarding widespread 340B Program abuse and non-compliance by 340B Providers, which the Government Defendants may not address.

As Proposed Intervenors stated in their opening motion, the recent change in administration supports Proposed Intervenors' contention that the government may not represent adequately their interests. Any change of administration increases the possibility that the Government Defendants may change position or stop defending a lawsuit. *Env't Integrity Project v. Wheeler*, No. 20-CV-

1734 (KBJ), 2021 WL 6844257, at *3 (D.D.C. Jan. 27, 2021) ("What is more, given the recent change in administration, it is not at all clear that the Federal Defendants will continue to defend the prior administration's rule.") (granting motion to intervene). On February 21, 2025, the Government Defendants filed motions for an extension of time in the five cases before this court, stating that additional time is required to "ensure that the Department's position is consistent with the new administration's policies." The real possibility that the administration may change its position on the substantive issues before this court further supports Proposed Intervenors' argument that the Government may not adequately represent its interests and the Proposed Intervenors' vital interest in participating in this case.

### F.    Alternatively, the Court Should Allow Permissive Intervention.

Plaintiffs' arguments that *Astra* bars intervention should, as previously explained, be rejected. Sec. I. C, *supra*, Proposed Intervenors have standing, the Motion is timely, and intervention would not open the floodgates to further intervention. *See* Sec. I.A; I.B.

Further, as Plaintiffs have recognized several times throughout their opposition, Proposed Intervenors have set forth a defense to Plaintiffs' claims, which shares a common issue of fact and law with the pending litigation. As this Court has recognized, that is all that is required to meet the requirement that Proposed Intervenors have a claim or defense. *Ass'n of Washington Bus.*, 2024 WL 3225937, at *13 (finding a common claim or defense met where putative intervenors sought to intervene to defend a challenged agency action); *see E.E.O.C. v. Nat'l Children's Ctr., Inc.,* 146 F.3d 1042, 1046 (D.C. Cir. 1998) (the D.C. Circuit has explicitly "eschewed strict readings of the phrase 'claim or defense,' allowing intervention even in 'situations where the existence of any nominate 'claim' or 'defense' is difficult to find.'" (quoting *Nuesse v. Camp,* 385 F.2d 694, 704 (D.C. Cir. 1967)) (cleaned up).

## CONCLUSION

For the foregoing reasons, the Court should grant the Motion to Intervene.

Dated: February 24, 2025

Respectfully submitted,

William B. Schultz (D.C. Bar No. 218990)
Margaret M. Dotzel (D.C. Bar No. 425431)
**ZUCKERMAN SPAEDER LLP**
1800 M Street NW, Suite 1000
Washington, DC 20036
Tel: (202) 778-1800
Fax: (202) 822-8106
wschultz@zuckerman.com
mdotzel@zuckerman.com

*Attorneys for Proposed Intervenors*

## CERTIFICATE OF SERVICE

I certify that on February 24, 2025, I filed the foregoing with the Clerk of the Court using

the ECF System, which will send notification of such filing to the registered participants

identified on the Notice of Electronic Filing.

_____
William B. Schultz