# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELI LILLY AND COMPANY, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>ROBERT F. KENNEDY JR., *et al.*,<br><br>*Defendants*. | Case No. 1:24-cv-3220 (DLF) |
| BRISTOL MYERS SQUIBB COMPANY,<br><br>*Plaintiff*,<br><br>v.<br><br>ROBERT F. KENNEDY JR., *et al*,<br><br>*Defendants*. | Case No. 1:24-cv-3337 (DLF) |
| NOVARTIS PHARMACEUTICALS CORPORATION,<br><br>*Plaintiff*,<br><br>v.<br><br>ROBERT F. KENNEDY JR., *et al*,<br><br>*Defendants*. | Case No. 25-cv-0117 (DLF) |
| SANOFI-AVENTIS U.S. LLC<br><br>*Plaintiff*,<br><br>v.<br><br>ROBERT F. KENNEDY JR., *et al.*,<br><br>*Defendants*. | Case No. 1:24-cv-3496 (DLF) |

**DECLARATION OF MAUREEN TESTONI IN SUPPORT OF 340B HEALTH, UMASS MEMORIAL MEDICAL CENTER, AND GENESIS HEALTHCARE SYSTEM'S MOTION FOR SUMMARY JUDGMENT**

I, Maureen Testoni, state as follows under the penalty of perjury:

1. I am the President and Chief Executive Officer of 340B Health, an Intervenor Defendant in this action.

2. The information set forth in this declaration is based upon my personal knowledge.

**The Product Replenishment Model**

3. For many years, certain providers who may purchase drugs covered by the 340B statute (340B Hospitals) have used the product replenishment model to manage different drug inventories and meet their compliance obligations under the 340B statute, which prohibits 340B Hospitals and other 340B Providers from reselling or transferring a 340B drug to an individual who is not their patient.

4. The product replenishment model helps ensure that 340B discounts are only provided to 340B-eligible patients of 340B Providers that use a single neutral physical drug inventory of 340B and non-340B drugs rather than two physically separate inventories.

5. Product replenishment works slightly differently depending upon whether a drug is dispensed to a 340B patient at a 340B Hospital or through a contract pharmacy.

6. Within a 340B Hospital, the hospital makes an initial purchase of a covered drug at the drug's list price, because the drug has not yet been dispensed to a 340B patient. A virtual inventory system then tracks dispenses of the drug, recording instances when the drug is dispensed to a 340B patient. Once a full package of the drug has been dispensed to 340B patients, the 340B Hospital purchases the drug at the 340B discounted price to replenish its stock. The 340B Hospital will forever replenish its stock of that drug package at the 340B price when the number of drugs dispensed to 340B patients reaches that package size.

7. When a contract pharmacy is involved, the product replenishment model functions in three steps. First, the pharmacy dispenses drugs purchased at market prices to patients from its regular inventory. Second, a third-party administrator or the pharmacy itself identifies the patients who received those drugs that are eligible for 340B discounts, using 340B-tailored software. That software operates under the oversight of the 340B Hospital, and each 340B-eligible drug is reported to the 340B Hospital. Third, once eligibility is confirmed and a full package of the drug has been dispensed to 340B patients, the 340B Hospital purchases the drug at the 340B discounted price, and the manufacturer (or its wholesaler) ships the drug to the dispensing pharmacy, replenishing the pharmacy's stock for the drug it dispensed to the 340B patient, where it becomes part of the pharmacy's regular inventory. The pharmacy passes on to the 340B Hospital the payment it received when it dispensed the drug, less an agreed upon dispensing fee.

8. Under either scenario, product replenishment functions differently than a rebate would.

9. When done in-house, the 340B Hospital pays market price for a drug one time. Every subsequent purchase of drugs dispensed to 340B patients is at the 340B discounted price.

10. For a contract pharmacy, the 340B Hospital never purchases drugs at the market price. Instead, it purchases drugs at the 340B discounted price and uses those drugs to replenish the contract pharmacy's inventory of drugs dispensed to 340B patients. There is no rebate involved.

11. Under a rebate model, the 340B Hospital is forced to purchase a covered drug at its market price each time. On the other hand, product replenishment—whether done in-house or through a contract pharmacy—allows 340B Hospitals to access the discounted 340B price at the time of purchase.

**HRSA Audits**

12. The 340B statute requires the Secretary to establish a mechanism to prevent duplicate discounts. 42 U.S.C. § 256b(a)(5)(A)(ii). Per that directive, the Health Resources and Services Administration (HRSA) requires 340B Hospitals to state (when they register for 340B) whether they plan to use 340B drugs for Medicaid Fee-for-Service (FFS) patients and, if so, to provide their Medicaid billing number(s) to be included on the HRSA 340B Medicaid Exclusion File (MEF) so that states and manufacturers will know that 340B Hospitals' drugs are not eligible for a Medicaid rebate, preventing a duplicate discount.

13. HRSA audits this process, and failure to have the correct Medicaid billing numbers on the MEF will be identified as a "duplicate discount" finding in a HRSA audit, even though HRSA does not verify whether the state actually invoiced a manufacturer for a rebate on a 340B drug or whether the manufacturer paid a rebate. HRSA, Clarification on Use of the Medicaid Exclusion File (Dec. 12, 2014), https://www.hrsa.gov/sites/default/files/hrsa/opa/clarification-medicaid-exclusion.pdf (last visited Mar. 17, 2024).

14. In my role as President and Chief Executive Officer of 340B Health, I have had several conversations with 340B Hospitals regarding HRSA's annual audits.

15. In those conversations, I learned that there have been several instances when HRSA audits a covered entity, issues a Medicaid duplicate discount finding because the correct Medicaid billing numbers were not listed in the MEF, but then downgrades that duplicate discount finding to a "Medicaid Exclusion File Error." This occurs when a covered entity provides HRSA with documentation that their state Medicaid agency did

not collect manufacturer rebates for 340B claims during the audit period. HRSA has revised findings in final audit reports to reflect that duplicate discounts did not occur as a result of the incorrect or incomplete billing information listed in the MEF.

16. I also know from my conversations with 340B Hospitals that state Medicaid agencies do not always respond to hospital requests for documentation regarding whether those agencies collected manufacturer rebates. As a result, it is likely that the number of duplicate discount findings is larger than the reality, as several covered entities will be unable to prove that their error did not lead to an improper duplicate discount.

On this __18__ th day of March, 2025, I declare under penalty of perjury that the foregoing is true and correct.

_____
Maureen Testoni
President and Chief Executive Officer
340B Health