# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELI LILLY AND COMPANY, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>ROBERT F. KENNEDY JR., *et al.*,<br><br>*Defendants*. | Case No. 1:24-cv-3220 (DLF) |
| BRISTOL MYERS SQUIBB COMPANY,<br><br>*Plaintiff*,<br><br>v.<br><br>ROBERT F. KENNEDY JR., *et al*,<br><br>*Defendants*. | Case No. 1:24-cv-3337 (DLF) |
| NOVARTIS PHARMACEUTICALS CORPORATION,<br><br>*Plaintiff*,<br><br>v.<br><br>ROBERT F. KENNEDY JR., *et al*,<br><br>*Defendants*. | Case No. 25-cv-0117 (DLF) |
| SANOFI-AVENTIS U.S. LLC<br><br>*Plaintiff*,<br><br>v.<br><br>ROBERT F. KENNEDY JR., *et al.*,<br><br>*Defendants*. | Case No. 1:24-cv-3496 (DLF) |

**INTERVENOR DEFENDANTS 340B HEALTH, UMASS MEMORIAL MEDICAL CENTER, AND GENESIS HEALTHCARE SYSTEM'S REPLY IN SUPPORT OF <u>THEIR CROSS MOTION FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

ARGUMENT ................................................................................................................................ 2

I.    The 340B Statute Requires Up-Front Discounts. ................................................................. 2

      A.    The Plain Language of the 340B Statute Does Not Permit Plaintiffs' Rebate Models. .................................................................................................................. 2

      B.    Intervenor Defendants' Statutory Arguments are not Barred. ......................... 5

II.   Neither ADAPs nor the Replenishment Model Supports the Argument that Rebate Models are Permissible. ............................................................................................ 7

III.  Plaintiffs Mischaracterize or Mispresent Statutory Compliance Obligations, Clearly Illustrating why they Should Not Replace HRSA's Oversight ............................... 8

IV.  HRSA's Denial of the Rebate Models was not Arbitrary and Capricious ........................... 12

V.   Novartis' and BMS's Constitutional Arguments Fail. ........................................................ 14

CONCLUSION ............................................................................................................................ 14

...

# TABLE OF AUTHORITIES

**CASES**

*Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*,
   988 F.2d 146 (D.C. Cir. 1993) .................................................................................. 13

*Boechler, P.C. v. Comm'r of Internal Revenue*,
   596 U.S. 199 (2022) ..................................................................................................... 4

*Jackson v. Modly,*
   949 F.3d 763 (D.C. Cir. 2020) ..................................................................................... 7

*Mayo v. Jarvis*,
   177 F. Supp. 3d 91 (D.D.C. 2016) ............................................................................... 6

*N. Carolina Comm'n of Indian Affs. v. U.S. Dep't of Lab.*,
   725 F.2d 238 (4th Cir. 1984) ....................................................................................... 6

*Novartis Pharmaceutical Co. v. Johnson*,
   102 F.4th 452 (D.C. Cir. 2024) .................................................................................... 5

*Pharm. Rsch. & Manufacturers of Am. v. United States Dep't of Health & Hum. Servs.*,
   43 F. Supp. 3d 28 (D.D.C. 2014) ................................................................................. 5

*Pierce v. S.E.C.*,
   786 F.3d 1027 (D.C. Cir. 2015) ................................................................................... 6

*SEC v. Chenery Corp..*
   332 U.S. 194 (1947) .................................................................................................. 5, 6

**STATUTES**

42 C.F.R. § 438.3 ............................................................................................................. 10

42 U.S.C. § 1396r-8 ................................................................................................... 8, 10

42 U.S.C. § 256b ................................................................................................ 1, 2, 3, 5, 9

**OTHER AUTHORITIES**

Ashwin Mundra, Drug Channels,
   *The 340B Noncompliance Data Gap Leaves Drug Manufacturers in the Dark*
   (Mar. 18, 2022) .......................................................................................................... 11

B. Garner,
   Modern English Usage 1020 (4th ed. 2016) ................................................................ 4

*Clarification on the Use of Medicaid Exclusion File*,
   HRSA (Dec. 12, 2014) ............................................................................................... 9

GAO,
   *GAO-18-480, Drug Discount Program: Federal Over-sight of Compliance at
   340B Contract Pharmacies Needs Improvement* 16 (June 2018 Report) ................................ 11

Letter from Carole Johnson, Administrator, HRSA to Paul Hudson, CEO,
   Sanofi-Aventis U.S. LLC (Dec. 13, 2024), *Sanofi v. Kennedy,*
   No. 24-cv-3496 (D.D.C. Dec. 16, 2024) ...................................................................... 6

Letter from Carole Johnson, Administrator, HRSA, to Joaquin Duato,
   Chairman and Chief Executive Officer, Johnson & Johnson (Sept. 17, 2024),
   *Johnson & Johnson v. Kennedy,* No. 24-cv-3188 (D.D.C. Nov. 12, 2024) ................................ 6

Letter from Chantelle V. Britton, Director, Office of Pharmacy Affairs, HRSA,
   to Lucas Montarce, Executive Vice President and Chief Financial Officer,
   Eli Lilly and Company (Sept. 18, 2024) ...................................................................... 13

Sanofi Rebate Policy Announcement,
   *Sanofi v. Kennedy,* No. 24-cv-3496 (D.D.C. Dec. 16, 2024) ...................................................... 11

**REGULATIONS**

Final Notice Regarding Section 602 of the Veterans Health Care Act of 1992—Rebate
   Option, 63 Fed. Reg. 35,239, 35,240 (June 29, 1998) ................................................... 7

Medicare and Medicaid Programs; CY 2025 Payment Policies Under the Physician
   Fee Schedule and Other Changes to Part B Payment and Coverage Policies;
   Medicare Shared Savings Program Requirements; Medicare Prescription Drug
   Inflation Rebate Program; and Medicare Overpayments, 89 Fed. Reg. 97,710
   (Dec. 9, 2024) ........................................................................................................... 13

340B Health, UMass Memorial Medical Center, and Genesis HealthCare System (Intervenor Defendants) respectfully submit this reply in support of their Cross Motion for Summary Judgment. Plaintiffs' opposition is most notable for what it does not do: It does not address the plain language of the two sentences at issue in the 340B statute, 42 U.S.C. § 256b(a)(1). Plaintiffs fail to give any meaningful weight to the "shall offer" provision of the statute, added by Congress in 2010, which requires that manufacturers provide the 340B ceiling price at the time of purchase and not at some later, unspecified date. Manufacturers can only abide by that command by offering covered drugs at discounted prices at the time of those drugs' sale, not later. Nor do Plaintiffs seriously contest that the structure of the 340B statute supports what the plain language makes clear: Plaintiffs' rebate models are impermissible. As all parties agree that this "is a straightforward case of statutory interpretation," Plaintiffs' failure to address those points should end the case.

Plaintiffs also argue that Intervenor Defendants are barred from even presenting their arguments, misunderstanding that the Health Resources and Services Administration (HRSA) has *no discretion* to violate the 340B statute and permit rebate models and that, in any event, Intervenor Defendants' arguments are not outside the record. They further repeat tired arguments about program noncompliance and recent policy changes, which have already been rebutted by both the Intervenor Defendants and Government Defendants in this case, and which are irrelevant to the statutory interpretation question that Plaintiffs concede resolves this case. Intervenor Defendants respectfully submit that they have the correct read of the 340B statute, and that this Court should grant their motion for summary judgment.

**ARGUMENT**

I.   **The 340B Statute Requires Up-Front Discounts.**

   A.   **The Plain Language of the 340B Statute Does Not Permit Plaintiffs' Rebate Models.**

Plaintiffs' argument that the 340B statute permits a rebate model depends on completely ignoring the key language of the "shall offer" provision of the statute, which says that manufacturers shall offer the covered drug "*for purchase at or below*" the applicable ceiling price. 42 U.S.C. § 256b(a)(1) (emphasis added). As Intervenor Defendants made clear in their opening brief, under a plain reading of the statute, the "shall offer" provision means that manufacturers must provide up-front price reductions that keep covered drugs (340B drugs) under the ceiling price when those drugs are initially purchased by covered entities (340B Providers) (the 340B agreement entered into with the Secretary "shall require that the manufacturer offer" 340B drugs "*for purchase* at or below the appliable ceiling price.") *See* Intervenor Defs.' Mot. for Summ. J. 20–22. The word "purchase" in the statute means that the 340B discounted price must be offered at the time of purchase. That provision, which dictates how manufacturers effectuate the 340B price, forbids manufacturers from imposing—and the Secretary from approving—a rebate model because such model would require 340B Providers to *purchase* 340B drugs *above* the ceiling price. Thus, the statutory language does not support Plaintiffs' argument that their rebate program is consistent with the statutory requirement that 340B drugs be offered for purchase at or below the ceiling price.

Plaintiffs' argument that the "shall offer" provision of the statute only requires that drug manufacturers not refuse to sell drugs to covered entities is nonsensical. Pls.' Joint Opp'n Br. 11. Even Plaintiffs have not claimed that prior to 2010 manufacturers who wanted to participate in Medicaid or Medicare part B could refuse to sell their drugs to 340B covered entities. Congress

added the "shall offer" provision in 2010, and if the provision had the meaning that Plaintiffs ascribe to it, then prior to 2010, drug manufacturers could merely performatively enter into agreements with the Secretary and then simply refuse to sell 340B drugs to covered entities.

Plaintiffs rely on the statute's numerous references to the term "rebate" but they decline to acknowledge that nearly all references to "rebate" in the statute refer to Medicaid drug rebates, and not any hypothetical rebates under the 340B statute. 42 U.S.C. § 256b(a)(1) ("amount required to be paid" is reduced by a "rebate percentage" which is determined based on the "average total rebate" required by section 1927(c) of the Social Security Act); *id.* at § 256b(a)(2)(A) (describing how to generally calculate the Medicaid rebate percentage under section 1927(c) of the Social Security Act); *id.* at § 256b(a)(2)(B) (describing how to calculate the Medicaid rebate percentage under section 1927(c) of the Social Security Act for over the counter drugs); *id.* at § 256b(a)(5)(A) (directing the Secretary to implement a mechanism pertaining to the billing of 340B drugs to Medicaid when such drugs are subject to a Medicaid rebate).

Nor does Congress's addition of the term "rebate" to 42 U.S.C. § 256b(d)(1)(B)(iv) in 2010 pertain to using rebates as a method of offering 340B discounts. Instead that section requires that "rebates and other discounts provided by manufacturers *to other purchasers*" on 340B drugs after those drugs have already been sold to covered entities be reported to the Secretary. *Id*. That term was added to effectuate appropriate refunds that manufacturers owe covered entities if those rebates or other discounts reduce the applicable ceiling price for the relevant quarter for those drugs. Also, as Intervenor Defendants explained in their opening brief, use of the word "rebate" in the parenthetical in the first sentence of section 340B(a)(1) references how the Secretary sets a 340B discount price when the Medicaid rebate percentage cannot serve as the basis for the 340B price. *See* Intervenor Defs.' Mot. for Summ. J. 18–19. It does not describe how the 340B price is

3

made available to covered entities, which is dictated by the "shall offer" provision. *See* Intervenor Defs.' Mot. for Summ. J. 18–20; *Boechler, P.C. v. Comm'r of Internal Revenue*, 596 U.S. 199, 206 (2022) (noting that a phrase "found in a parenthetical . . . is typically used to convey an 'aside' or 'afterthought'") (quoting B. Garner, Modern English Usage 1020 (4th ed. 2016)). In any event, even if there were any uncertainty about the meaning of these uses of the term "rebate," the "shall offer" language added in 2010 controls.

In addition, the structure of 340B as a whole further demonstrates that the statute forbids Plaintiffs' proposed rebate models, a point Plaintiffs neglect to address. *See* Intervenor Defs.' Mot. for Summ. J. 25–26. Plaintiffs argue that the data requested in their proposed rebate models is necessary to give the statute's audit mechanism "teeth," but as the Government Defendants explain in their opening brief, manufacturers are able to establish reasonable cause to perform an audit without collecting claims data from 340B Providers. *See* Gov't Mot for Summ J. 19–20. Recent audits initiated by Plaintiff Eli Lilly and Company (Lilly) demonstrate this point. In 2023, Lilly exercised its statutory right to audit two covered entities for compliance with the 340B statute. According to Lilly, the two audit workplans that Lilly submitted to HRSA per the agency's Manufacturer Audit Guidelines identified evidence, "that two covered entities had likely engaged in violations of the 340B statute" based on "extensive internal investigation and analysis."[1]

Plaintiffs also do not contest that 340B Providers have no ability to audit manufacturers under the 340B statute, or that, as a result, 340B Providers would be helpless to determine whether drug manufacturers are complying with their obligations to provide the 340B discount price under a rebate model. *See* Intervenor Defs.' Mot. for Summ. J. 25–26. Similarly, Plaintiffs do not respond

---

[1] Pls.' Joint Opp'n Br. 15 (citing Brief of Eli Lilly & Co. as *Amicus Curiae*, *Sanofi-Aventis U.S. LLC v. HHS*, No. 24-CV-1603 (DLF) (D.D.C. Oct. 31, 2024), ECF No. 19-1 at 7).

4

to the basic point that the statute contains no guardrails for a rebate model. As Intervenor Defendants discussed in their opening brief, because the statute does not contemplate rebates nothing in the 340B statute commits manufacturers to actually issue valid rebates within a certain amount of time and nothing prevents manufacturers from imposing any number of data or other requirements upon covered entities to get any promised rebate. *See id.* 27–28. Nor could HRSA itself impose any such guardrails because HRSA lacks the necessary rulemaking authority to do so. *Pharm. Rsch. & Manufacturers of Am. v. United States Dep't of Health & Hum. Servs.*, 43 F. Supp. 3d 28, 42–43 (D.D.C. 2014); *see* Intervenor Defs.' Mot. for Summ. J. 29.

In support of their statutory argument, Plaintiffs rely heavily on *Novartis Pharmaceutical Co. v. Johnson*, 102 F.4th 452 (D.C. Cir. 2024). *Novartis* concerned whether pharmaceutical companies could limit the number of contract pharmacies that distribute 340B drugs, and the court held that because the statute is silent as to distribution, manufacturers may place certain limitations on the distribution of covered 340B drugs. *Novartis*, 102 F.4th at 460; *see* Intervenor Defs.' Mot. for Summ. J. 31–32. In direct contrast to the statute's silence regarding distribution, as discussed above, the 340B statute provides specific direction about the method by which manufacturers must offer covered drugs for sale: at or below the ceiling price. 42 U.S.C. § 256b(a)(1). Since the statute is not silent about how manufacturers must effectuate the 340B price nor compliance measures, *Novartis* does not give manufacturers authority to adopt their own compliance measures with a rebate program.

### B.    Intervenor Defendants' Statutory Arguments are not Barred.

*SEC v. Chenery Corp.* does not bar Intervenor Defendants from raising these dispositive statutory interpretation questions. 332 U.S. 194, 196 (1947). Because Section 340B's plain language requires an up-front price reduction, HRSA has no authority to permit Plaintiffs' proposed rebate models. Where the court is being asked, as it is here, to consider an interpretation

5

of a federal statute that requires a certain result, *Chenery* is inapplicable. *N. Carolina Comm'n of Indian Affs. v. U.S. Dep't of Lab.*, 725 F.2d 238, 240 (4th Cir. 1984) ("We do not, however, perceive there to be a *Chenery* problem in the instant case because the question of interpretation of a federal statute is not 'a determination or judgment which an administrative agency alone is authorized to make.'") (quoting *Chenery,* 332 U.S. at 196).

In any event, even if *Chenery* did apply, Intervenor Defendants would still not be prohibited from advancing their legal arguments because in its letter to Sanofi, HRSA relied in part on the "shall offer" provision to deny Sanofi's rebate models.[2] *See Pierce v. S.E.C.*, 786 F.3d 1027, 1034 (D.C. Cir. 2015) ("[I]f an agency has justified an order on alternative grounds, one of which is dispositive, the reviewing court may uphold the agency action."); *see also Mayo v. Jarvis*, 177 F. Supp. 3d 91, 144 (D.D.C. 2016), *amended,* 203 F. Supp. 3d 31 (D.D.C. 2016), *vacated sub nom. Mayo v. Reynolds*, 875 F.3d 11 (D.C. Cir. 2017), and *aff'd sub nom. Mayo v. Reynolds*, 875 F.3d 11 (D.C. Cir. 2017) ("That response, which sets forth the agency's *own* rationale for its conclusion, cannot be characterized as a *post hoc* rationalization.")[3]

---

[2] Letter from Carole Johnson, Administrator, HRSA to Paul Hudson, CEO, Sanofi-Aventis U.S. LLC (Dec. 13, 2024), *Sanofi v. Kennedy,* No. 24-cv-3496 (D.D.C. Dec. 16, 2024), Dkt. No. 1-7 (The statute also provides that the ceiling price "represents the maximum price that covered entities may permissibly be required to pay for the drug," and that said agreement "shall require that the manufacturer offer each covered entity covered outpatient drugs for purchase at or below the applicable ceiling price if such drug is made available to any other purchaser at any price."); Letter from Carole Johnson, Administrator, HRSA, to Joaquin Duato, Chairman and Chief Executive Officer, Johnson & Johnson (Sept. 17, 2024), *Johnson & Johnson v. Kennedy,* No. 24-cv-3188 (D.D.C. Nov. 12, 2024), Dkt. No. 1-9 (same); Sanofi Opp'n to Gov't Brief, *Sanofi v. Kennedy*, No. 24-cv-3496, Dkt. No. 46 at 3 ("HRSA issued the Violation Letter due in part to its conclusion that Section 340B prohibits the use of credits or rebates, *see* AR 425").

[3] This Court has already rejected Plaintiffs' secondary argument that, as a general matter, Intervenors are prohibited from advancing arguments that differ from the legal arguments made by the initial parties to the litigation. Order on Mot. to Intervene at 5, Dkt. No. 33.

## II. Neither ADAPs nor the Replenishment Model Supports the Argument that Rebate Models are Permissible.

Plaintiffs argue that the existence of a single program where HRSA has allowed rebates, the State AIDS Drug Assistance Programs (ADAPs), supports their argument that the 2010 amendment to Section 340B(a)(1) does not prohibit rebates as a method of providing 340B discounts. First, Intervenor Defendants are not aware of any evidence in the legislative record that Congress was aware that ADAPs used rebates to avail themselves of the benefits of the 340B Program when passing that amendment, and Plaintiffs fail to provide any. Congress is not presumed to be aware of an administration's interpretation of the statute unless there is "some evidence of (or reason to assume) that the Congress is familiar with the interpretation at issue." *Jackson v. Modly,* 949 F.3d 763, 773 (D.C. Cir. 2020) (cleaned up)). Also, the 340B statute was amended in 2010 through the Affordable Care Act, a massive and complex statute that represented a foundational shift in the country's healthcare system, which is consistent with an unawareness by Congress of guidance HRSA issued more than twelve years prior to the 2010 amendment.

Additionally—and crucially—ADAPs purchase 340B drugs through a rebate model on a voluntary basis; they are not required to comply with a unilateral rebate model drug manufacturers impose on them.[4]

Plaintiffs' argument that the replenishment model includes rebates is also wrong. Under Plaintiffs' proposed rebate models, 340B Providers *always* purchase 340B drugs at their market price, and then may receive a later rebate subject to whatever procedures and restrictions Plaintiffs

---

[4] Final Notice Regarding Section 602 of the Veterans Health Care Act of 1992—Rebate Option, 63 Fed. Reg. 35,239, 35,240 (June 29, 1998), https://www.govinfo.gov/content/pkg/FR-1998-06-29/pdf/98-17142.pdf, (HRSA described the ADAP rebate option as an "alternate method of accessing 340B pricing," specifically for certain state ADAPs unable to access upfront discounts, and noted that state ADAPs using both rebate and direct purchase mechanisms may "*elect* to access [340B] pricing through a rebate mechanism while other ADAP components may develop systems to access a direct discount.") (emphasis added).

adopt. Under the replenishment model, in contrast, 340B Providers always purchase 340B drugs at the 340B discount price. There is no rebate involved. Both the Intervenor and Government Defendants have explained that simple, but crucial, difference between the replenishment model and Plaintiffs' proposed rebate models in their opening briefs. *See* Gov't Mot. for Summ. J. 16–17; *see also* Intervenor Defs.' Mot. for Summ. J. 10–11, 31.

While 340B hospital pharmacies make a *single* purchase of covered drugs at the market price when purchasing the first package of a covered drug, this practice does not transform the replenishment model into a rebate model because there is *never* a rebate provided for that purchase. *See* Intervenor Defs.' Mot. for Summ. J. 10. Moreover, that initial purchase does not qualify as a 340B purchase because, for in house replenishment, the covered entity does not know whether or how much of that package will be dispensed to 340B patients. 340B pricing is appropriate only after enough medication to reach the package size has been dispensed to 340B patients. It is only at that time that a covered entity is knowingly purchasing drugs that qualify for the 340B discounts.

### III. Plaintiffs Mischaracterize or Mispresent Statutory Compliance Obligations, Clearly Illustrating why they Should Not Replace HRSA's Oversight.

Plaintiffs' unsubstantiated claims about non-compliance demonstrates their misunderstanding of 340B statutory compliance rules and regulations. That misunderstanding is just another reason why manufacturers should not be permitted to determine in the first instance whether a claimed 340B discount is valid and should qualify for a rebate. For example, Plaintiffs misstate 340B's statutory requirements and HRSA's long-standing policy pertaining to Medicaid fee-for-service (FFS) claims and the prohibition against duplicate discounts. They also misstate the statutory requirements placed *on states* (not 340B covered entities) to prevent duplicate discounts relating to Medicaid managed care organization (MCO) claims, which are set forth in the Medicaid Rebate Statute (MDRP). 42 U.S.C. § 1396r-8(j)(1).

For Medicaid FFS claims, the law is clear: Under the 340B statute, the Secretary is required to develop a mechanism to prevent duplicate discounts. 42 U.S.C. § 256b(a)(5)(A)(ii). The Secretary's chosen mechanism requires covered entities to list their billing numbers on HRSA's Medicaid Exclusion File (MEF) so that state Medicaid agencies can exclude claims with those billing numbers from their rebate requests to manufacturers. *See Clarification on the Use of Medicaid Exclusion File*, HRSA (Dec. 12, 2014), https://tinyurl.com/ycvupudr. That is the only obligation with which covered entities must comply to meet their obligation to prevent duplicate discounts on Medicaid FFS claims. Failure to correctly list those billing numbers on HRSA's MEF results in a "duplicate discount" finding but is in no way evidence that any duplicate discount actually occurred. That failure is only evidence that the covered entity did not list its billing numbers correctly on HRSA's MEF. After issuing that finding, HRSA will not investigate to determine whether a duplicate discount actually occurred and will not downgrade the audit finding unless the covered entity can provide evidence from their state Medicaid agency to show that duplicate discounts did not occur. As a result, and as explained in Intervenor Defendants' opening briefs, the HRSA audit findings do not provide proof of an actual duplicate discount. Intervenor Defs.' Mot. for Summ. J. 33–35. Contrary to Plaintiffs' assertion, Intervenor Defendants do not make this distinction to suggest what audit findings HRSA should and should not enforce, but rather, to explain why the duplicate discount findings that manufacturers rely on do not paint the picture of abuse that Plaintiffs claim.

Plaintiffs assert that the 340B statute's duplicate discount requirements pertaining to Medicaid FFS claims also apply to Medicaid MCO claims. That is incorrect. The 340B statute's duplicate discount provision applies to "drugs that are subject to payment of a rebate" under the Medicaid statute. The Medicaid rebate statute explicitly exempts Medicaid MCO claims for 340B

9

drugs (340B MCO claims) from being subject to Medicaid rebates. 42 U.S.C. §1396r-8(j)(1). Thus, states do not have the legal authority to seek rebates from manufacturers for such claims. This explains why CMS issued regulations outlining steps that *state* Medicaid agencies are expected to take to meet their obligation to refrain from attempting to collect rebates on Medicaid MCO claims that pertain to 340B. 42 C.F.R. § 438.3(s)(3). Federal law places no obligation on 340B Providers to prevent states from improperly claiming rebates on 340B MCO claims, which explains why HRSA has issued no guidance for covered entities on this issue and does not police this area in audits of 340B Providers.

Thus, contrary to Plaintiffs' mischaracterization or misunderstanding, the law pertaining to duplicate discounts for Medicaid MCO claims clearly places the onus on states to refrain from claiming rebates on such 340B claims. There is therefore no "blame shifting" to states by covered entities, as contended by Plaintiffs. Pls.' Joint Opp'n Br. 16. It is simply the law.[5]

In addition to mischaracterizing the statutory obligations, Plaintiffs incorrectly tout that other entities have discovered instances of duplicate discounts and claim that Intervenor Defendants take no issue with those additional sources. Pls.' Joint Opp'n Br. 15. To be clear, Intervenor Defendants do take issue with those sources, as they do not represent evidence of duplication. For example, the GAO report Plaintiffs cite does not state that duplication occurred, but merely references HRSA's duplicate discount audit findings, which as Intervenor Defendants have explained, do not actually provide any evidence that duplicate discounts occurred. *E.g.,* Pls.' Opp'n Br. 15 (citing GAO, *GAO-18-480, Drug Discount Program: Federal Over-sight of*

---

[5] Because states are responsible for implementing processes to prevent MCO duplicate discounts, covered entities have no way of knowing, or controlling, whether one of those state processes inadvertently removes the identifier covered entities place on 340B MCO claims, which could result in a duplicate discount.

*Compliance at 340B Contract Pharmacies Needs Improvement* 16 (June 2018 Report), https://www.gao.gov/assets/d18480.pdf (citing HRSA findings)). The additional cited sources also do not provide evidence of duplicate discounts. *See* Ashwin Mundra, Drug Channels, *The 340B Noncompliance Data Gap Leaves Drug Manufacturers in the Dark* (Mar. 18, 2022), https://tinyurl.com/483wrbe8 (a blog post by Kalderos' Chief Revenue Officer, who represents that their estimation that three-to-five percent of Medicaid rebates were duplicate discounts was based on Kalderos' "best guess," which was based on undisclosed methodology from "manufacturer partner data"); Brief of Eli Lilly & Co. as *Amicus Curiae, Sanofi-Aventis U.S. LLC v. HHS,* No. 24-CV-1603 (DLF) (D.D.C. Oct. 31, 2024), Dkt. No. 19-1 at 7 (stating that internal workplans, which are not publicly available, showed that two covered entities had "likely" engaged in 340B violations). Plaintiffs have presented no publicly available data that can verify their beefed-up complaints about systemic compliance issues nor shared their own data, analyses, or methodology on that issue.

Further, Plaintiffs misrepresent Sanofi's patient definition as it applies to the scenario of an individual diagnosed with cancer who lives in a rural area and receives a chemotherapy treatment plan from a large urban hospital several hours away from their home. Pls.' Joint Opp'n Br. 12 n.3. Plaintiffs claim that the 340B rebate would be approved because the prescription for chemotherapy relates to the administration of the chemotherapy provided by the covered entity. This explanation distorts what Sanofi's patient-eligibility condition actually says, which is that the individual receiving the chemotherapy "receive[] the prescription in connection with healthcare services provided by the covered entity."[6] In the hypothetical, the individual receives the

---

[6] Sanofi Rebate Policy Announcement, at 5, *Sanofi v. Kennedy,* No. 24-cv-3496 (D.D.C. Dec. 16, 2024), Dkt. No. 1-2.

prescription from the large, urban, non-340B Provider that has no connection to the 340B provider; the 340B provider played no role in delivering the healthcare services that resulted in the order for chemotherapy. Intervenor Defendants are concerned that Sanofi would deny valid rebate claims because the individual did not receive the prescription for chemotherapy from the 340B Provider even though the 340B provider is responsible for providing and administering the chemotherapy. Moreover, Sanofi's failure to provide any analysis of its patient definition criteria prevents 340B Hospitals and HRSA from knowing which claims will qualify for 340B under Sanofi's rules, creating valid concerns about Sanofi setting its own patient definition rules. Finally, the fact that HRSA did not object to Sanofi's patient definition is irrelevant. HRSA objected to the rebate policy on its face so there was no need for HRSA to address the specifics.

Plaintiffs' inaccurate analyses on the topic of duplicate discounts and the practical implications of their own policies are one of the many reasons fueling covered entities' concern about manufacturers setting their own rules about 340B compliance under an imposed rebate program.

### IV. HRSA's Denial of the Rebate Models was not Arbitrary and Capricious

Plaintiffs refashion their arguments regarding ADAPs, the replenishment model, and 340B Program integrity measures to argue that HRSA's actions were arbitrary and capricious. Intervenor Defendants respectfully submit that HRSA's decision was neither arbitrary nor capricious for all of the reasons described above and discussed in the Intervenor Defendants' and Government Defendants' opening briefs. *See* Gov't Mot. for Summ. J. 18–25; *see also* Intervenor Defs.' Mot. for Summ. J. 39–41.

Plaintiffs' arguments regarding the Inflation Reduction Act's (IRA's) Drug Price Negotiation Program relate to an entirely separate program that can be addressed in a variety of ways, as discussed by both the Intervenor Defendants and Government Defendants. *See* Intervenor

12

Defs.' Mot. for Summ. J. 36–37; Gov't Mot. for Summ. J. 21–24. Relatedly, Plaintiffs' concerns regarding the IRA's Maximum Fair Price (MFP) nonduplication prohibitions are premature because CMS is still considering whether to take any further steps itself to prevent duplication.[7] Contrary to Plaintiffs' assertions, HRSA's denial of Plaintiffs' proposed rebate models does not make Plaintiffs' IRA MFP non-duplications argument ripe for review in this action.

As Intervenor Defendants made clear in both their Motion to Intervene and Motion for Summary Judgment, each of Plaintiffs' proposed rebate models (which all vary in scope and application) create significant uncertainties and fundamentally change the way the 340B Program has operated for the entirety of its existence. *See* Desai Decl. to Mot. to Intervene (Dkt. No. 18-4); Carr Decl. to Mot. to Intervene (Dkt. No. 18-2); Intervenor Defs.' Mot for Summ. J. 11–17. In light of those uncertainties, it was certainly not arbitrary and capricious for HRSA to require Plaintiffs to maintain the system that has worked well in the 340B Program for over thirty years: upfront discounts.[8] For similar reasons, vacatur is inappropriate here should the Court find that HRSA provided insufficient reasons for its denial of Plaintiffs' rebate models, because HRSA can easily resolve and address that issue. *Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993).

---

[7]   Medicare and Medicaid Programs; CY 2025 Payment Policies Under the Physician Fee Schedule and Other Changes to Part B Payment and Coverage Policies; Medicare Shared Savings Program Requirements; Medicare Prescription Drug Inflation Rebate Program; and Medicare Overpayments, 89 Fed. Reg. 97,710, 98,293-95 (Dec. 9, 2024) https://www.govinfo.gov/content/pkg/FR-2024-12-09/pdf/2024-25382.pdf.

[8]   *See, e.g.,* Letter from Chantelle V. Britton, Director, Office of Pharmacy Affairs, HRSA, to Lucas Montarce, Executive Vice President and Chief Financial Officer, Eli Lilly and Company (Sept. 18, 2024), Dkt. No. 1-5.

## V.     Novartis' and BMS's Constitutional Arguments Fail.

For all the reasons described *supra*, and in the Intervenor Defendants' and Government Defendants' opening briefs, HRSA's refusal to permit Novartis and BMS from implementing their proposed rebate models clearly did not violate their substantive or procedural due process rights. *See* Gov't Mot. for Summ. J. 25–32.

## CONCLUSION

For the foregoing reasons, including those in the Intervenor Defendants' opening briefs, Intervenor Defendants' Cross-Motion for Summary Judgment should be granted.

Dated: April 8, 2025                    Respectfully submitted,

                                          /s/ William B. Schultz

                                       William B. Schultz (D.C. Bar No. 218990)
                                       Margaret M. Dotzel (D.C. Bar No. 425431)
                                       ZUCKERMAN SPAEDER LLP
                                       2100 L Street NW, Suite 400
                                       Washington, DC 20037
                                       Tel: (202) 778-1800
                                       Fax: (202) 822-8106
                                       wschultz@zuckerman.com
                                       mdotzel@zuckerman.com

                                       *Attorneys for Intervenor Defendants*

1

**CERTIFICATE OF SERVICE**

I certify that on April 8, 2025, I filed the foregoing with the Clerk of the Court using the ECF System, which will send notification of such filing to the registered participants identified on the Notice of Electronic Filing.

William B. Schultz